UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID HISDAL, Plaintiff, v. MICHAEL LABADIE, in personam, Defendant. | CASE NO. 2:25-cv-01930-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction. Dkt. No. 6. Having considered the motion, Plaintiff's response (Dkt. No. 14), Defendant's reply (Dkt. No. 15), and the relevant record, the Court DENIES the motion to dismiss.

## I. BACKGROUND

Plaintiff David Hisdal filed a Complaint in this action on October 6, 2025, alleging several claims against Defendant Michel Labadie stemming from an agreement the Parties

allegedly reached in or around October 2020. Dkt. No. 1 ¶¶ 9, 17–20. Plaintiff asserts in the Complaint that, pursuant to Federal Rule of Civil Procedure 9(h), this Court has admiralty subject-matter jurisdiction under 28 U.S.C. § 1333 and supplemental jurisdiction over any state claims under 28 U.S.C. § 1367 and that venue is proper under 28 U.S.C. § 1391(b)(2). *Id.* ¶¶ 3–5.

Plaintiff rents slip L-17 at Semiahmoo Marina Condominium Association. *Id*. ¶ 12. Defendant's boat ("the Boat") was moored at a public slip in Blaine Harbor marina in Blaine, Washington, at the time the Parties first met. *Id.* ¶ 10. Defendant informed Plaintiff that he urgently needed a berth for the vessel and that Plaintiff mooring the boat at Plaintiff's slip would be of great service. *Id.* ¶ 13. The Parties met up at the Blaine Marina, and Defendant showed Plaintiff the Boat. *Id.* ¶ 16. In the course of this meeting, the Parties reached an oral agreement. *Id.* ¶¶ 17–20. In exchange for moorage, insurance, and maintenance ("keep[ing] the vessel clean and in good order, fit, tight, and staunch"), Plaintiff would get 50% ownership of the vessel after an unspecified period. *Id.* ¶ 17. Defendant turned the Boat over to Plaintiff's custody that same day. *Id.* ¶ 23.

Plaintiff alleges that he conditioned his acceptance of the offer on Defendant providing the following within 30 days: a written version of Defendant's verbal warranty about the condition of the boat, proof of ownership, proof of legal import into the U.S., proof of registration in Washington, and a draft agreement to create a partnership for co-ownership of the Boat. *Id.* ¶ 19. At some point Defendant sent Plaintiff a draft partnership contract; however, Plaintiff claims the draft did not set forth the terms of their verbal agreement. *Id.* ¶ 33. Plaintiff objected to the proposed written agreement and demanded revision, in part to include previously discussed withdrawal or tolling provisions related to Plaintiff's "significant history of heart issues." *Id.* ¶¶ 34–35. However, Defendant insisted to Plaintiff that because the vessel was now in Plaintiff's slip, Plaintiff had effectively agreed to the terms of the written agreement as drafted

by Defendant. *Id.* ¶ 34. No written contract was ever signed, and Defendant never complied with the agreement terms upon which Plaintiff conditioned his acceptance. *Id.* ¶ 32.

Shortly after the Parties reached their verbal agreement, Plaintiff fell ill with major cardiac issues between November 2020 and March 2021. *Id.* ¶ 36. Defendant was contacted during this time and informed of Plaintiff's health status. *Id.* ¶ 37. Due to his heart issues, Plaintiff was unable to fully examine the Boat. *Id.* at 38. In or around April 2021, Plaintiff informed Defendant that Plaintiff could not form a partnership because he was no longer able to operate the Boat upon medical advice. *Id.* ¶ 39. Over the next five years; however, Plaintiff alleges that Defendant made no payments toward expenses for the Boat, did not visit it, and "refuses to take back the vessel or move it." *Id.* ¶¶ 46, 47, 49.

Although Plaintiff has insured the Boat as required by Semiahmoo Marina (*id.* ¶ 27) and tried to maintain the Boat to the marina's standards (*id.* ¶ 40), it has never met the criteria to stay in the marina, specifically the requirements that vessels be operational and currently registered in the country of ownership (*id.*). Despite Plaintiff's efforts, the Boat is not operational, (*id.* ¶ 41), and Plaintiff believes it is not registered (*id.* ¶ 42). Semiahmoo Marina has requested that the vessel be removed. *Id.* ¶ 44.

Plaintiff alleges that, since 2023, Defendant has repeatedly brought actions against Plaintiff related to the Boat in the small claims division of Whatcom County District Court, "only to continue cases, not appear, or voluntarily dismiss and refile." *Id.* ¶ 50. Defendant has alleged in the state-court actions that Plaintiff owes him money and/or is required to maintain responsibility for the Boat. *Id.*

In the action before this Court, Plaintiff asserts the following claims against Defendant, *in personam*: (1) breach of maritime contract (*id*. 1 ¶¶ 52–55); (2) fraud (*id.* ¶¶ 56–65); claims seeking (3) declaratory judgment of no partnership under the Declaratory Judgments Act, 28

U.S.C. § 2201 (*id.* ¶¶ 66–67), or, in the alternative, (4) dissolution of said partnership under RCW 25.05.300(5)(a)–(b) (*id.* ¶¶ 68–70); and (5) a putative freestanding claim for injunctive relief. *Id.* ¶ 71–77.

On October 24, 2025, Defendant filed the instant Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. No. 6) under Federal Rule of Civil Procedure 12(b)(1). The matter originally noted on November 1, 2025. On August 28, 2026, the Court requested additional briefing (*see* Dkt. No. 25 (Order for Additional Briefing)), which the Parties timely filed on September 11, 2026 (Dkt Nos. 26 (Plaintiff), 27 (Defendant). The matter is now fully briefed and ripe for review.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction, having the power to hear certain cases only as the Constitution and federal law authorize." *Newtok Vill. v. Patrick*, 21 F.4th 608, 615 (9th Cir. 2021); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are presumed to lack subject-matter jurisdiction over a case, and the burden of showing otherwise rests upon the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377. If a district court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(h)(3)).

The Constitution recognizes that the judicial power of federal courts extends "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1; *California v. Deep Sea Rsch., Inc.*, 523 U.S. 491, 501 (1998). This power was granted to federal courts because of the need for a uniform body of law across the country for maritime commerce. *Deep Sea Rsch., Inc.*, 523 U.S. at 501. The constitutional provision was incorporated into the first Judiciary Act in 1789, and federal courts have retained "admiralty or maritime jurisdiction" since then. *See* 28

U.S.C. § 1333(1); *Deep Sea Rsch.*, 523 U.S. at 501. Federal district courts have original jurisdiction, exclusive of state courts, over any civil claims within admiralty or maritime jurisdiction, though parties may pursue common-law remedies to which they are entitled in state courts (or in federal court via diversity or supplemental jurisdiction). *See* 28 U.S.C. § 1333(1); *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 440 (2001).

A district court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In adjudicating a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, courts accept all factual allegations in a complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1233 (9th Cir. 2019).

## III. DISCUSSION

In his Motion to Dismiss, Defendant identifies three reasons for the Court to dismiss or stay Plaintiff's this action: (1) the agreement between the Parties was not a maritime contract subject to federal admiralty jurisdiction, (2) the Parties agreed to a forum-selection clause that precludes federal consideration of Plaintiff's claim, and (3) under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), the Court should decline to exercise its jurisdiction over Plaintiff's declaratory-judgment claim given a pending state civil action in Whatcom County. Dkt. No. 6 at 2. However, Defendant's motion includes argument only on the first of these issues, and indeed, the Motion to Dismiss appears to be unfinished. *See generally* Dkt. No. 6 at 3 (including a number of subsection headings followed only by the text ". . . summary text . . ."). It is well established that pro se pleadings (and by extension, motions) are held "to less stringent

standards than formal pleadings drafted by lawyers." *See United States v. Qazi*, 975 F.3d 989, 992–93 (9th Cir. 2020) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "But it is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022). The court is required only to draw "every reasonable or warranted factual inference" in pro se litigants' favor and use common sense in interpreting their pleadings, not to create arguments on behalf of parties who appear pro se. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974). Moreover, "issues raised in a brief that are not supported by argument are deemed abandoned," *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996), and a court is not "required to address perfunctory and undeveloped arguments." *Melegh v. Emily Program, P.C.*, No. C23-1458, 2024 WL 4277849, at *4 (W.D. Wash. Sept. 24, 2024) (citation modified). Because Defendant presented no arguments related to the alleged forum-selection clause or *Brillhard* abstention in his motion (instead providing only topical headings for unwritten sections), these issues are not meaningfully included in his motion, and the Court will not consider arguments raised for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (A "district court need not consider arguments raised for the first time in a reply brief.").[1]

Therefore, the only question for the Court to answer is whether "the agreement between the Parties was not a maritime contract subject to federal admiralty jurisdiction" and Plaintiff's

---

[1] This ruling does not mean that the question of abstention (under *Brillhard* or any other abstention doctrine) may not be properly raised in a future motion. Questions that implicate the Court's jurisdiction or fundamental principles of federalism cannot be waived and may be properly placed before the Court at any time or raised *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (subject-matter jurisdiction); *Scarlett v. Alemzadeh*, No. C19-7466, 2020 WL 3617781, at *2 (N.D. Cal. July 2, 2020) (abstention, collecting cases). At this juncture, however, Defendant has not properly raised any abstention issue, and the Court does not find good cause to reach abstention *sua sponte*, particularly as it lacks clear information about the parallel state court action of the issues raised there. While Defendant has filed two documents he identifies as the state-court complaint, the two "complaints" differ substantially and neither contains indicia of having been filed with a court. *See* Dkt. Nos. 8, 8-1.

contract claim (and the case as a whole) thus falls outside the Court's jurisdiction.[2]

Defendant argues that the contract (which he calls a "written partnership agreement" and "a private, not-for-profit co-ownership agreement") is not a maritime contract because it is unrelated to maritime commerce and is governed by Washington law. Dkt. No. 6 at 3, 4.

Plaintiff counters that the contract is a maritime contract, and his contract claim is therefore subject to exclusive federal jurisdiction (Dkt. No. 14 at 4–5), that his tort claim is also subject to admiralty jurisdiction (*Id.* at 2–4), and that "although Plaintiff has not expressly pleaded claims to foreclose maritime liens for necessaries against Defendant *in personam* or the vessel *in rem*, the factual causes of action set forth in his complaint support such claims," which are also subject to maritime jurisdiction (*id.* at 5).[3]

The Court first considers whether it has maritime jurisdiction over Plaintiff's claim for breach of contract, and then whether it has jurisdiction over the remaining claims.

**A. Maritime Jurisdiction over the Contract Claim**

Because no written agreement was ever signed between the Parties, the "contract" the Court will consider for this motion is the oral agreement originally reached by the Parties. Oral contracts are generally regarded as valid under maritime law. *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961).[4]

---

[2] Even if the complaint is not within the court's maritime jurisdiction as asserting claims related to a maritime *contract*, the Court could still exercise jurisdiction over it if, as Plaintiff argues (*see* Dkt. No. 14 at 2–4), Plaintiff's fraud claim alleges a maritime tort. Ultimately, however, the Court does not reach this question. *See infra* Section III.B.

[3] The Court finds this final argument irrelevant because Plaintiff brings no claims under 46 U.S.C. § 31342. Whether this Court *would* have jurisdiction over such a claim, and whether the facts presented would support one, are therefore irrelevant unless and until Plaintiff seeks to amend his complaint to add such a claim. In Defendant's words, "Jurisdiction cannot rest on hypothetical or unpled claims that might be asserted in some different pleading. The Court looks to the claims actually brought." Dkt. No. 15 at 5.

[4] Defendant has provided the Court with a document he identifies as the draft agreement that Defendant sent to Plaintiff. *See* Dkt. No. 15-4. However, Plaintiff asserts that he objected to the proposed written agreement and that it did not set forth the terms of the Parties' verbal agreement. Dkt. No. 1 ¶¶ 33–34. Therefore, accepting Plaintiff's

"Admiralty jurisdiction extends to claims that arise from contract if the subject matter of the contract is maritime in nature." *Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1441 (9th Cir. 1989) (citing *North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.,* 249 U.S. 119, 125 (1919)). As the Court previously observed, the question of whether the contract is maritime in nature is more nuanced than either Party acknowledged in its initial briefing. *See* Dkt. No. 25 at 3. Defendant, relying on *Norfolk Southern Railway Co. v. James N. Kirby Pty. Ltd.*, 543 U.S. 14 (2004), reduced the question to "whether the contract's principal objective is to further maritime commerce[.]" Dkt. No. 15 at 3. But the Supreme Court has made clear that a contract does not have to be commercial in nature to be subject to admiralty jurisdiction. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674–75 (1982). Plaintiff also oversimplified, quoting a decontextualized rule that "[a] contract that relates to a ship . . . is a maritime contract." Dkt. No. 14 at 5 (quoting *Western Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1116 (W.D. Wash. 2021)). But "many contracts with a pronounced maritime flavor have been held not within the jurisdiction." *Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1036 (9th Cir. 1984). "To repeat an oft-cited example, a contract to build a ship is not within admiralty jurisdiction although a contract to repair a ship is." *Id.* (citing *Kossick*, 365 U.S. at 735 (1961)).

As the Court noted in its Order for Additional Briefing, some components of the contract appear to be well-established maritime subjects. However, contracts for sale or mortgage of a boat fall outside admiralty jurisdiction. *See Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 804 (9th Cir. 2001). In Defendant's supplemental briefing, he maintains that this was "not a contract of sale" but an agreement whose primary purpose, "as alleged, was to secure a berth,

---

facts as pleaded, the draft "contract" was never formed and is not the contract whose breach Plaintiff alleges in the Complaint.

repair and care, and provide insurance for a sailboat while its owner was abroad." Dkt. No. 26 at 5–6. Plaintiff, for his part, urges the Court to view the contract as one that "principally governed a private prospective co-ownership relationship" (Dkt. No. 27 at 4) and also "allocate[ed] responsibility for maritime-related expenses and obligations" among "prospective owners" (*id.* at 2). Plaintiff also insists that "[t]he controlling inquiry" is whether the contract's "primary objective is maritime commerce," (*id.* at 1 (citing Kirby, 543 U.S. at 24–25)) though he acknowledges that there is no "categorical commerciality requirement" for maritime contracts (*id.* at 3).

As a preliminary matter, Defendant's continued focus on the non-commercial nature of the contract is misplaced. To be sure, the purpose of the jurisdictional grant is the protection of maritime commerce, and this purpose is the guiding principal that shapes the conceptual boundary of what is maritime. *See Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1217 (9th Cir. 2007). However, the nature of a particular contract does not have to be commercial to subject the contract to admiralty jurisdiction in furtherance of this purpose. The Supreme Court has held that "The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity" but "can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost Ins. Co.*, 457 U.S. at 674–75. As Defendant points out, "this Circuit exercises contract jurisdiction over pleasure craft without hesitation." Dkt. No. 26 at 2 (citing *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024–26 (9th Cir. 2001)). *Kirby* has not disrupted this practice. Indeed, *Kirby* expanded rather than narrowed maritime contract jurisdiction with its primary holding that a maritime-commerce objective that is not insubstantial is *sufficient* to render a contract maritime, even where non-maritime commercial objectives are also present. *See generally* 543 U.S. 14. *Kirby* involved a

contract for transportation of cargo across land and sea from Australia to Huntsville, Alabama, and the Court's opinion focused on the land/sea dichotomy. It is completely silent on the commercial/non-commercial distinction, and is not helpful to Defendant on that count. This Court is not aware of, and Defendant has not provided, any case in which a contract was found not to be maritime in nature because its subject matter, though maritime, was not *commercial* enough. The question of how "commercial" a contract is is simply not properly a part of the analysis here.

To ascertain whether a contract is maritime, courts must examine the "nature and subject-matter" of the contract, *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 611 (1991), and "the true criterion is whether it has reference to maritime service or maritime transactions." *Sentry Select*, 481 F.3d at 1217 (quoting *Kirby*, 543 U.S. 14, 23–24 (2004)). Even so, the existence of such "reference" in a contract is not enough, because parties may enter into a "mixed contract" containing both maritime and non-maritime components. After *Kirby*, courts analyzing mixed contracts utilize the "primary objective test," examining the contract as a whole to determine whether its primary purpose is maritime, thus subjecting it to admiralty jurisdiction. *Id.* at 1218–19 (citing *Kirby*, 543 U.S. at 24–27). Of course, even when proceeding issue-by-issue, "[t]he difficulty lies in determining what is 'maritime.'" *Pier 39*, 738 F.2d at 1036. Instead of independently analyzing what subjects are maritime and what are not, courts benefit from looking at case law and comparing the contracts before them with other contracts that have been held to be inside or outside the jurisdiction. *Id.* In their supplemental briefing, both Parties remind the Court that *Sentry Select*'s requirement that a court examine "the contract as a whole to determine whether its primary purpose was to protect or affect maritime commerce" means a Court should not "sever" maritime from non-maritime obligations. 481 F.3d at 1219 (quoted in Dkt. No. 26 at 2; and cited in Dkt. No. 27 at 3). Plaintiff is correct that the Court therefore should

not decide whether the contract at issue is maritime by tallying "maritime" versus "non-maritime" components, but that the critical "question is what the integrated transaction was principally intended to accomplish." Dkt. No. 27 at 3. Nonetheless, the Court begins by situating itself in the details—that is, by identifying which components of the contract are maritime and which are not. This analysis is necessary so that when the Court determines the "primary purpose" of the contract it can discern whether that purpose lands among the maritime or non-maritime components of the contract. And, while the *Kirby* Court rejected "rule[s] for identifying maritime contracts that depend[ed] solely on geography" and classified mixed contracts as non-maritime unless their "land" components were only "incidental," it cautioned that "[g]eography" remains "useful . . . in a limited sense: If a bill's *sea* components are insubstantial, then the bill is not a maritime contract." *Kirby*, 543 U.S. at 27.

### 1. The Contract Contains Both Land Components and Sea Components that Are Not Insubstantial

In its Order for Additional Briefing, the Court identified four main areas, or components, addressed by the contract (as alleged in the Complaint): repairs, moorage, provision of insurance, maintenance, and "eventual co-ownership." Dkt. No. 25 at 4. The Court asked the Parties to provide briefs on "how the Court should evaluate the various components of the oral contract to establish its 'primary purpose'" and to "support their contentions with citations to case law and explanations of how the contract at issue here is like or unlike the contracts addressed in those cases." *Id.* at 4–5. Having considered the Parties' responses, the Court will now consider each of these components, as well as an additional component identified by Plaintiff, Defendant's warranty of seaworthiness, and will look to case law to determine whether each is traditionally considered a maritime service or transaction subject to admiralty jurisdiction.

**a. Maintenance and Repairs**

The United States Supreme Court has held that "storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 367 (1990). Contracts for repair and maintenance of a launched vessel are maritime in nature. *Kossick*, 365 U.S. at 735; *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125–127 (1919); *New Bedford Dry Dock Co. v. Purdy (The Jack-O-Lantern)*, 258 U.S. 96, 99 (1922); *United States Fire Ins. Co. v. Foss Mar. Co.*, No. C21-1506, 2023 WL 2538787, at *4 (W.D. Wash. Mar. 16, 2023). The initial agreement for maintenance was that Plaintiff "keep the vessel clean and in good order, fit, tight, and staunch." Dkt. No. 1 ¶ 17. Maintenance Plaintiff has funded pursuant to this agreement has included "a new house battery, bilge pump, rigging parts, hull repair, hull cleaning, diving to clean the bottom, zinc replacement, [and] pressure washing[.]" *Id.* ¶ 28. These are the kinds of maintenance and repair activities that have been secured through contracts that have been regarded as maritime contracts. Therefore, maintaining and repairing the boat is a maritime component of the contract.

**b. Moorage**

As mentioned earlier, storing a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity. *Sisson*, 497 U.S. at 367. The Ninth Circuit has held that "wharfage contracts are maritime if wharfage is provided to a specific vessel." *Pier 39*, 738 F.2d at 1037. Plaintiff points to *Goodman v. 1973 26 Foot Trojan*, 859 F.2d 71, 72–73 (8th Cir. 1988), an Eighth Circuit case in which the court sustained a finding of maritime jurisdiction over arrangement to rent a slip to the owner of a twenty-six-foot pleasure boat. There as here, the contract was an unwritten agreement, and the court rejected the argument that admiralty is limited to commercial shipping. *See id.* at 72. The Court finds *Goodman* instructive

and finds that moorage of the Boat at a marina on a navigable waterway is a maritime component of the contract.

**c. Insurance**

Plaintiff's agreed-upon duties included securing insurance for the Boat (*See* Dkt. No. 1 ¶ 17; Dkt. No. 6 at 2), and Plaintiff asserts that he was required to secure insurance for the boat to comply with Marina policy (Dkt. No. 1 ¶ 27). Contracts to insure a boat have long been established as maritime contracts. *See, e.g.*, *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1, 35–36 (1870). To be sure, the "insurance" component of the agreement at issue here is not a marine insurance policy but rather a contract to secure marine insurance. But Defendant does not argue that this component of the contract is not maritime (arguing instead that is not a principal purpose of the contract). Given the history of courts considering maritime insurance to be a subject of maritime contracts, along with the fact that insurance was a prerequisite of moorage (also a traditional maritime activity), the Court finds that the agreement to secure insurance coverage for the Boat is a maritime component of the contract.

**d. Partial Ownership / Co-Ownership**

Suits arising out of the sale of a vessel do not, as a general rule, give rise to admiralty jurisdiction. *Herman Fam. Revocable Tr.*, 254 F.3d at 804. The same is true for mortgage contracts financing such a sale. *See The John J. Barlum Detroit Trust Co. v. Barlum S.S. Co. (The Thomas Barlum)*, 293 U.S. 21, 47 (1934).

The agreement at issue in this case establishes neither a traditional mortgage nor a cash transaction for ownership (or co-ownership) of the Boat but, rather, an arrangement by which Plaintiff would provide ongoing services for the Boat in exchange for equity in the Boat. *See* Dkt. No. 1 ¶ 17, 53; Dkt. No. 6 at 2. Even so, to the extent that an ownership share of the Boat

was a component of the contract, the Court agrees with Defendant that this is a traditionally non-maritime component.

**e. Warranty of Seaworthiness**

The Complaint alleges that Defendant "verbally warranted that that that the vessel was seaworthy and operational[ and] free of major defects" and agreed to provide a written warranty and related documents within 30 days. Dkt. No. 1 ¶¶ 18–19. Plaintiff argues that "seaworthiness is part and parcel of every maritime contract in admiralty." Dkt. No. 26 at 4 (citing *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 422 (1953) (Jackson, J., dissenting)).[5] Be that as it may, the Court is not convinced that such warranty is necessarily a maritime component of *this* contract, because a promise that a ship is "seaworthy and operational[ and] free of major defects" might just as easily be, in the context of a sale, a non-maritime warranty of merchantability. However, the Court need not resolve this uncertainty because it is obvious that giving, or receiving, a warranty of the Boat's seaworthiness was not either Party's primary purpose in executing the contract but was rather an auxiliary term meant to facilitate the contract's other goals.

* * *

In short, the Court finds that the contract contains both maritime (sea) and non-maritime (land) components. Because the sea components are not insubstantial, the Court must move beyond strict geographic classification to determine what is the contract's primary purpose. *See Kirby*, 543 U.S. at 27 (2004).

//

//

[5] Although Plaintiff's citation here is not an incorrect statement of law, the Court notes with concern that Plaintiff, through counsel, failed to indicate in the citation that the referenced page appears in a dissent in *Hawn*, not the majority opinion. Counsel is reminded that the "dissent" parenthetical is not optional and is necessary information for comporting with counsel's duty of candor and ensuring that the Court is not misled into assuming a cited opinion represents binding law when it does not.

**2. The Primary Purpose of the Contract Is Maritime**

The agreement central to this case was a contract for services that this Court concludes are all connected to traditional maritime activity (moorage, maintenance and repairs, and provision of insurance) in exchange for a promise of equity in the Boat. It is clear that the contract contained both "land" and "sea" components, neither insubstantial and each in exchange for the other. Plaintiff contracted to provide moorage, maintenance, repairs, and insurance for the Boat, all sea components, in exchange for an ownership share to be provided by Defendant (a land component). But what was the contract primarily intended to achieve?

Both case law and the terms of the contract are instructive here. As the "closest analogue" for this case, Plaintiff offers *Federal Insurance Co. v. Speedboat Racing Ltd.*, 200 F. Supp. 3d 312 (D. Conn. 2016). In that case, as Plaintiff summarizes:

> an agreement conveyed a share in the yacht-owning entity while obligating the counterparty to pay the yacht's operating, repair, maintenance, and insurance costs in exchange for its use. Applying *Kirby*, the court held that the ownership share "was not . . . the principal objective of the Agreement," that the obligations concerning use, repair, insurance, and seaworthiness were the primary purpose, and that the contract was maritime; the court rejected the argument that the arrangement was a non-maritime "co-owners' management agreement" as exalting "form . . . over substance."

Dkt. No. 26 at 5–6 (quoting 200 F. Supp. 3d at 330–33, 336). For his part, Defendant points to *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802 (9th Cir. 2001) as demonstrating "that an ownership transaction does not become a maritime contract merely because the property is a vessel." Dkt. No. 27 at 4. While that principal is true, it does not answer the question of whether the contract here *is* an ownership transaction, as the distinguishable agreement in *Herman Family* clearly was (or would have been, had the deal not fallen through). *Herman Family* addressed negotiations that were unequivocally for the sale of a boat, and the fact that the

owner of the boat "undertook repair and refurbishing work" during negotiations does not bring it in line with the facts here. *See* 254 F.3d at 803.

Defendant offers no other analogous cases, but argues that the contract primarily constitutes an "ownership transaction" and "an arrangement contemplating partial ownership is not transformed into an admiralty contract merely because the prospective owners also addressed the ordinary responsibilities of keeping, insuring, maintaining, and repairing it." Dkt. No. 27 at 4. He reasons that, while "a contract to provide a maritime service"—such as moorage, maintenance, or insurance—might be maritime, an "agreement allocating [the] cost" of those services and assigning "responsibility for an asset" is not. *Id.* at 2.

This argument, while creative, is unsupported by any authority. Moreover, its logic is out of step with the facts of this case as Plaintiff has pleaded them. The contract did not allocate financial responsibility for ongoing repair, moorage, and insurance of the Boat. It created a situation in which a vessel in need of a slip would be moored, a vessel in need of repairs would be maintained, and a (possibly uninsured) vessel would be newly insured. Moreover, at the time performances of these services began, and at least for some time thereafter, the asset was not shared; it was Defendant's alone. *See* Dkt. No. 1 ¶ 17 ("Labadie promised that after a period to be later determined, Hisdal would get 50% ownership of the vessel.").

On these facts, Plaintiff has the better argument: this contract can be more easily understood as a contract for moorage and maintenance, paid for with the promise of equity in a vessel at a later undetermined date—not as a contract for partial ownership of a vessel, paid for with in-kind services and moorage payments. Moreover, at least one Circuit has found that a contract is maritime where its "non-maritime provisions are contingent and have never been given effect"—which is at least arguably the case for the ownership component of the contract. *Flota Maritima Browning de Cuba, S.A. v. Snobl*, 363 F.2d 733, 736–37 (4th Cir. 1966). The

contract included a promise of future equity in the Boat "after a period to be later determined." Dkt. No. 1 ¶ 17. It was thin on specifics about the ownership timeline or structure, establishing only that one-half of the slip rental fee would be allocated to pay for Plaintiff's 50% equity in the prospective partnership, and that once a 50% equity target was reached, the Parties would share equal responsibility for the Boat's expenses. *Id.* ¶ 20. To date, Plaintiff's allegations do not indicate that the value of the Boat has been established or that any action has been taken to transfer title or equity of any share of the boat to Plaintiff. Plaintiff alleges that no record of ownership exists showing that he is an owner of the Boat. *Id.* ¶ 74. By contrast, its provisions for moorage, maintenance, and repair were immediately actionable and acted upon by Plaintiff, who alleges he has expended over $26,000 performing his obligations under the contract, all of them maritime. *Id.* ¶ 55. Plaintiff also alleges that the contract came to be formed after he learned that Defendant "was in a bind because . . . he . . . urgently needed to find a berth for the vessel"—not because Plaintiff himself was in the market for a boat. *Id.* ¶ 13.

Under these circumstances, the agreement reached between both Parties was a maritime transaction that sought to secure services for the boat, allowing its continued presence on navigable waterways, and promised to compensate Plaintiff for these services with equity in the Boat. Therefore, the Court finds that the primary purpose of the contract is maritime and that the contract is thus maritime in nature, subjecting Plaintiff's breach of contract claim to federal admiralty jurisdiction under 28 U.S.C. § 1333.

**B. Jurisdiction over the Remaining Claims.**

The Court does not reach Plaintiff's arguments about maritime tort jurisdiction because (a) the existence of maritime tort jurisdiction was not a subject of the Motion to Dismiss, and (b) the Court can assure itself of jurisdiction over this action without reaching the question of whether Plaintiff's fraud claim is maritime. All Plaintiff's claims arise from the same facts and

are part of the same case or controversy between the Parties. The Court is satisfied that if the tort claim is *not* a maritime tort, it is closely related to the maritime contract claim and therefore falls within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Similarly, the Court may exercise supplemental jurisdiction over Plaintiff's claim under RCW 25.05.300(5)(a)–(b), and the Declaratory Judgments Act itself gives the Court original jurisdiction over Plaintiff's claim arising under 28 U.S.C. § 2201 to the extent it relates to an actual case or controversy between the Parties.

As to Plaintiff's final claim, "[i]t is well settled that a claim for 'injunctive relief' standing alone is not a cause of action." *Kwai Ling Chan v. Chase Home Loans Inc.*, No. C12-273, 2012 WL 1252649, at *3 (W.D. Wash. Apr. 13, 2012) (collecting cases). While injunctive relief is more properly addressed as a remedy, it is within the Court's power to grant as appropriate, *see* 28 U.S.C. § 1651, and this request does not bring any part of the complaint outside the Court's jurisdiction.

Therefore, the Court finds that it has exclusive jurisdiction over the breach of contract claim and may exercise supplementary jurisdiction over any claims over which it lacks original jurisdiction. The Motion to Dismiss presents no compelling case to decline discretionary jurisdiction or stay any claim in favor of the parallel state court proceedings, and the Court will not do so at this time.

## IV. CONCLUSION

Accordingly, Defendant's Motion to Dismiss (Dkt. No. 6) is DENIED.

Dated this 30th day of September, 2026.

Tana Lin
United States District Judge